UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X

OMAR PICKENS,

                    Petitioner,

          -against-

MICHEAL SHEAHAN, Superintendent of
Five Points Correctional Facility

                    Respondent.
------------------------------------X

**MEMORANDUM AND ORDER**

12-CV-4308 (KAM)

**MATSUMOTO, United States District Judge:**

          *Pro se* petitioner Omar Pickens ("petitioner") is
incarcerated pursuant to a judgment of conviction in the Supreme
Court of New York, Kings County, for Manslaughter in the First
Degree and Criminal Possession of a Weapon in the Fourth Degree.
(ECF No. 2, Petition for Writ of Habeas Corpus ("the Petition")
1-16; ECF No. 7, Refiled Habeas Petition, 1-16.)  Petitioner
seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on
the grounds that: (1) respondent failed to disprove plaintiff's
justification defense, (2) the court improperly permitted
respondent to impeach respondent's own witness, and (3)
ineffective assistance of counsel.  Respondent opposes the
Petition.  (ECF No. 10, Opposition to Petition for Writ of
Habeas Corpus ("Opposition").)  For the reasons stated herein,
Mr. Picken's petition is denied.

## Background

Petitioner's conviction, sentence, and the instant petition stem from the stabbing and subsequent death of Akinyele Gaskin ("Mr. Gaskin" or "the victim"). According to respondent, on November 12, 2004, petitioner visited the apartment of Ms. Sparkle Griffith, his ex-girlfriend and the mother of his two children, at 187 Rochester Ave., Brooklyn, New York ("the residence" or "the apartment"). (Opposition ¶ 6.) The victim, Mr. Gaskin, was Ms. Griffith's new boyfriend, and was in the apartment when petitioner arrived. (*Id.*) Petitioner and Mr. Gaskin fought and petitioner stabbed Mr. Gaskin four times, which led to Mr. Gaskin's death. (*Id.*) Petitioner fled the scene after the fight and was arrested the next day. (*Id.* ¶¶ 6-8.)

### A. The Trial

Following his arrest, petitioner was charged with Murder in the Second Degree (N.Y. Penal Law §125.25(1)) and Criminal Possession of a Weapon in the Fourth Degree (N.Y. Penal Law §265.01(2)). (*Id.* ¶¶ 9-10.) After waiving his right to a jury trial, petitioner had a bench trial in the Supreme Court of New York, Kings County.

During the trial, the respondent called Ms. Griffith

as the sole eyewitness to the altercation between petitioner and Mr. Gaskin. Ms. Griffith testified that she had a romantic relationship for over ten years with petitioner. (ECF No. 10-1, State Trial Transcript ("Tr."), at 158.)[1] Ms. Griffith had three children, two of whom were fathered by petitioner. (*Id.* at 157.) Petitioner and Ms. Griffith lived together for six years until their relationship ended in January 2004. (*Id.* at 158.) Ms. Griffith last lived together with Mr. Pickens in the apartment where Mr. Gaskin was stabbed. (*Id.* at 157-58.) In the fall of 2004, Ms. Griffith began dating Mr. Gaskin, but they did not live together. (*Id.* at 161.) On November 12, 2004, petitioner called Ms. Griffith and told her he wanted to pick up the children the following day. (*Id.* at 163-64.) Petitioner, however, arrived at the apartment that same evening. He first knocked on Ms. Griffith's window and then rang the buzzer. (*Id.* at 165-66.) Mr. Gaskin was present and told Ms. Griffith to let petitioner in to see his children. (*Id.* at 167.) After entering the apartment, an altercation between petitioner and Mr. Gaskin began in the bedroom, but moved to the living room where the fight became physical after petitioner pushed Ms.

---

1 The page numbers cited herein refer to the page numbers assigned by the Electronic Court Filing System ("ECF") unless otherwise indicated.

Griffith. (Tr. at 184-88, 200.)

During the fight, the two men fell onto petitioner's infant daughter, Chyna, who was on the couch. (*Id.* at 201.) Ms. Griffith grabbed her daughter and took her to the building superintendent's apartment for safety. (*Id.* at 201-202.) When Ms. Griffith returned to the apartment, she saw blood on the living room floor and then petitioner and Mr. Gaskin face-to-face in the bedroom with Mr. Gaskin's back against the wall. (*Id.* 202-209.) Ms. Griffith testified that she could not see petitioner's hands but they were in the general area of Mr. Gaskin's torso. (*Id.* 205-206.) She said, however, that she did not see petitioner stab Mr. Gaskin. (*Id.* at 205-209.) Petitioner ran out of the apartment first, he was followed by Mr. Gaskin, and Ms. Griffith was the last to exit the apartment. (*Id.* at 216-217.) Petitioner fled towards Fulton Street while Mr. Gaskin banged on a police van that was stopped at a red light outside of the building. (*Id.* at 219.) An ambulance was called and Mr. Gaskin was transported to a hospital where he later died. (Opposition ¶¶ 6-7.) An officer found the knife used to commit the crime in the vestibule of 187 Rochester Ave. (*Id.* ¶ 7.)

At the time of his arrest, petitioner had a number of

contusions and swelling on his face and left hand. (Tr. at 351.) Petitioner received medical attention at the police station; but did not need to be transported to a hospital. (*Id.* at 350-351, 356.) Petitioner made oral statements and two written statements to a police detective, and he also made a videotaped statement about the events to an assistant district attorney. (*Id.* at 338-349.) In those statements, petitioner claimed that Mr. Gaskin intervened in an argument between petitioner and Ms. Griffith by striking petitioner. (*Id.* at 344.) Petitioner stated that he was knocked to the floor where Mr. Gaskin then stomped on his hands and kicked his head. (*Id.* at 394.) During this fight, petitioner stated he retrieved a knife he had hidden under the couch. (*Id.* at 344.) Petitioner further stated that the knife had a sheath on it when he removed it from under the couch and that the sheath flew off the knife while he was swinging the knife wildly in an attempt to get the upper hand in his fight with Mr. Gaskin. (*Id.* at 396-397.)

**B. Conviction and Sentence**

On September 29, 2006, after a bench trial, the New York State Supreme Court, Kings County, found petitioner guilty of second degree murder and possession of a weapon. (Opposition ¶ 10.) On November 17, 2006, petitioner was sentenced to

5

concurrent prison terms of twenty years to life for the murder

of Mr. Gaskin and one year for possession of a weapon. (*Id.* at

¶ 11.)

## C. Post-Trial Appeals in State Court

On December 4, 2007, petitioner appealed from his

judgment of conviction to the New York State Supreme Court,

Appellate Division, Second Department. (*See* ECF 10-2, State

Court Record, at 2,7.) Petitioner raised two claims: (1) the

evidence was legally insufficient to prove that the homicide was

intentional or unjustified, and therefore the verdict was

against the weight of the evidence; and (2) the State's use of

extrinsic evidence to impeach their own witness, Ms. Griffith,

was improper. (*Id.*) In a *pro se* supplemental brief dated May

19, 2008, petitioner raised five additional claims: (1) the

State's failure to submit any of his statements to the grand

jury and failure to charge justification, which the statements

would have supported, was in error; (2) trial counsel was

ineffective as he failed to call a crime scene reconstructionist

about blood stain patterns, failed to test the sheath for blood,

skin, or clothing, failed to withdraw defendant's waiver of a

jury when it became apparent that the State would try to impeach

Ms. Griffith, and failed to preserve defendant's claims for

appeal; (3) the New York State standard for ineffective assistance of counsel is inadequate in comparison to the federal standard; (4) defendant's waiver of a jury trial was invalid; and (5) the cumulative prejudice of petitioner's four other claims in his supplemental brief denied him a fair trial. (*Id.* at 83.)

On March 3, 2009, the Appellate Division modified the judgment of conviction, on the facts, and reduced the conviction from Murder in the Second Degree (N.Y. Penal Law §125.25(1)) to Manslaughter in the First Degree (N.Y. Penal Law § 125.20(1)) and affirmed the judgment as modified. (*Id.* at 154-156.); *People v. Pickens*, 60 A.D.3d 699 (2d Dep't 2009). The Appellate Division held that the evidence disproved justification beyond a reasonable doubt, but that evidence of intent to cause death, at the moment petitioner withdrew from the fight, was legally insufficient. *Pickens*, 60 A.D.3d at 701-02. The Appellate Division found that the government had only proved manslaughter, and not proved murder in the second degree, because the evidence proved beyond a reasonable doubt that petitioner intended only to cause serious physical injury not death. *Id.* at 702. The Appellate Division held that the admission of the impeachment evidence was harmless error, that defendant was not denied

effective assistance of counsel, and that defendant's claim of invalid waiver of a jury trial was unpreserved for appellate review and, in any event, without merit. *Id.* at 703. The Appellate Division remanded the case to the trial court for sentencing on the manslaughter charge. *Id.* at 700. On June 30, 2009, at resentencing, the trial court sentenced the petitioner to a determinate sentence of twenty-one years' incarceration plus five years' post-release supervision. (Opposition ¶ 16.)

Petitioner applied for leave to appeal to the New York Court of Appeals from the Appellate Division's partial affirmation of his conviction by letters dated March 30 and April 28, 2009. (*Id.* ¶ 15.) Petitioner sought review of claims that (1) the State's impeachment of its own witness was improper and (2) the State failed to disprove justification. (*Id.*) On July 21, 2009, petitioner's application for leave to appeal to the Court of Appeals was denied. *People v. Pickens*, 884 N.Y.S.2d 709 (2009).

On October 28, 2010, petitioner moved in the Appellate Division for a reduction of his sentence, in the interests of justice, asserting that his sentence was unduly harsh. (Opposition ¶ 18.) On February 22, 2011, the Appellate Division affirmed petitioner's sentence without opinion. *People v.*

*Pickens*, 81 A.D.3d 986 (2d Dep't. 2011). Petitioner applied for leave to appeal the Appellate Division's affirmation of his sentence to the Court of Appeals, (Opposition ¶ 20), which was denied on May 23, 2011. *People v. Pickens*, 16 N.Y.3d 898, 898 (2011).

## D. The Instant Petition

Petitioner applies for a federal writ of habeas corpus by undated petition received by this court on September 14, 2012. (*See generally* Refiled Habeas Petition at 1-16.)

## Discussion

## A. Legal Standard

When determining whether a writ of habeas corpus should issue, a federal court may only consider whether a person is in custody pursuant to a state court judgment in violation of the United States Constitution or laws or treaties of the United States. *See* 28 U.S.C. § 2254(a). Section 2254 requires a petitioner to exhaust state court remedies prior to seeking federal habeas relief. *See* 28 U.S.C. § 2254(b)-(c). In order to exhaust his or her state court remedies, a petitioner must "fairly present" federal constitutional claims to the highest state court with jurisdiction over them "in order to give the state the opportunity to pass upon and correct alleged violations of its

prisoners' federal rights." *Carvajal v. Artus*, 633 F.3d 95, 104
(2d Cir. 2011) (quoting *Duncan v. Henry*, 513 U.S. 364, 365
(1995)).

When a claim is exhausted and no other procedural bar
applies, a court will consider the merits of the claim under the
standard set out in 28 U.S.C. § 2254, as amended by the
Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").
Under this standard, a court may grant habeas relief "with respect
to any claim that was adjudicated on the merits in State court
proceedings" only if the state court decision was "contrary to, or
involved an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the United
States" or "was based on an unreasonable determination of the
facts in light of the evidence presented in the State court
proceeding." 28 U.S.C. §§ 2254(d)(1)-(2); *see also Kennaugh v.
Miller*, 289 F.3d 36, 42 (2d Cir. 2002). Unless the petitioner
rebuts the state court's factual findings by clear and convincing
evidence, the court must presume all state court factual
determinations are correct. 28 U.S.C. § 2254(e)(1). If the
petitioner "fails to exhaust state remedies by failing to
adequately present his federal claim to the state courts so that
the state courts would deem the claim procedurally barred, [the

federal court] 'must deem the claim[ ] procedurally defaulted.'"
*Carvajal*, 633 F.3d at 104 (quoting *Aparicio v. Artuz*, 269 F.3d 78,
90 (2d Cir. 2001)).

## B. Analysis

Petitioner seeks a writ of habeas corpus pursuant to 28
U.S.C. § 2254 on the grounds that: (1) respondent failed to
disprove his justification defense, (2) the court improperly
permitted respondent to impeach respondent's own witness, and (3)
ineffective assistance of counsel. The court finds these claims
to be without merit, accordingly, the petition is denied in its
entirety.

### I. Failure to Establish That the Homicide Was Unjustified

Petitioner claims that respondent had a duty to disprove
his justification defense but failed to do so. The Appellate
Division adjudicated defendant's legal sufficiency claim on the
merits, therefore the court applies the "unreasonable application
of clearly established federal law" standard as set forth in 28
U.S.C. § 2254. The Appellate Division stated:

> The defendant's contention that the grand jury
> proceedings were defective because the Assistant
> District Attorney did not instruct the grand jury on the
> justification defense is without merit. The People
> maintain broad discretion in presenting their case to
> the Grand Jury and need not seek evidence favorable to

> the defendant or present all of their evidence tending
> to exculpate the accused.  No evidence before the grand
> jury supported ajustification defense, and, accordingly,
> no such charge was warranted.

*Pickens*, 60 A.D.3d at 701-02 (internal citations and quotations

omitted); *see also People v. Spells*, 886 N.Y.S.2d 625.  The

Appellate Division's ruling constitutes an adjudication on the

merits for the purposes of AEDPA.  *See Zarvela v. Artuz*, 364 F.3d

415, 417 (2d Cir. 2004).

Where a state court adjudicates identical claims on the

merits, AEDPA requires this court to determine whether the state

court decision was either: (1) "contrary to, or involved an

unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States" or (2)

"based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding."  28 U.S.C.

§ 2254(d).  The Appellate Division's decision in petitioner's

criminal case was neither.

A petitioner "bears a very heavy burden" when

challenging the legal sufficiency of the evidence in a state

criminal conviction.  *Einaugler v. Supreme Court of the State of

N.Y.*, 109 F.3d 836, 840 (2d Cir. 1997).  To overturn a conviction

based on insufficiency of the evidence, a court must find that,

"viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "[A] state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas [review] unless the decision was objectively unreasonable." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (citation and quotation marks omitted).

Even when "faced with a record of historical facts that supports conflicting inferences, [this court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994). Thus, "[a] habeas court will not grant relief on a sufficiency claim unless the record is 'so totally devoid of evidentiary support that a due process issue is raised.'" *Sanford v. Burge*, 334 F. Supp. 2d 289, 303 (E.D.N.Y. 2004) (quoting *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994)).

When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*,

186 F.3d 91, 97 (2d Cir. 1999). "A person is guilty of second-degree murder when, "[w]ith intent to cause the death of another person, he causes the death of such person ..." N.Y. Penal Law § 125.25(1). "A person is guilty of manslaughter in the first degree when[,] [] [w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person." N.Y. Penal Law § 125.20(1). Under New York Penal Law § 35.15, "a person 'may' use physical force to defend himself or a third person, and his conduct, which would otherwise constitute an offense, is simply not criminal." *People v. McManus*, 67 N.Y.2d 541, 545-46 (N.Y. 1986) (citations omitted).

The prosecution has the burden of disproving beyond a reasonable doubt that a defendant's use of force was justified. *Id.* Justification, however, is not a defense to the use of deadly physical force unless the actor reasonably believed that another person was about to use deadly physical force against him and the actor was unable to retreat safely. N.Y. Penal Law § 35.15(2)(a); *see People v. Russell*, 91 N.Y.2d 280, 290 (N.Y. 1998); *People v. Goetz*, 68 N.Y.2d 96, 106 (N.Y. 1986). "The duty to retreat reflects the idea that a killing is justified only as a last resort, an act impermissible as long as other reasonable avenues are open. This has been true throughout New York's statutory and

14

decisional law, which in turn grew out of the common law." *People v. Jones*, 3 N.Y.3d 491, 494-95 (N.Y. 2004).

The Supreme Court has established that, when assessing the legal sufficiency of a state criminal conviction, a habeas court is required to consider the trial evidence in the light most favorable to the State, upholding the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 309, 319 (1979) (original emphasis omitted); *see also Parker v. Ercole,* 666 F.3d 830, 835 (2d Cir. 2011). Under this test, the court must draw all inferences and resolve all issues of credibility in favor of the prosecution. *Jackson*, 443 U.S. at 318-19, 326.

Here, viewing the evidence in the light most favorable to the prosecution, a fact finder could reasonably have found beyond a reasonable doubt that the use of a knife, a deadly weapon, was not justified. Respondent established that petitioner was the initial aggressor. Petitioner snatched Mr. Gaskin's chain from his neck but Mr. Gaskin did not respond with violence. (Tr. at 13, 185-186.) Mr. Gaskin only became physical with petitioner when defending Ms. Griffith after petitioner pushed her. (*Id.* at 187-89.) Although petitioner claims that Mr. Gaskin had overpowered him in the fight because

Mr. Gaskin was significantly more muscular than he was at the time, petitioner introduced a deadly weapon into a fist fight that he initiated. (*Id.* at 344, 394); *See Thomas v. Duncan*, No. 01-CV-6792, 2001 WL 1636974, at *7 (S.D.N.Y. Dec. 21, 2001) (holding that defendant who was initial aggressor and was aggressor throughout fight had no justification defense).

Nothing in the record shows that petitioner reasonably believed that Mr. Gaskin was about to use deadly physical force against him and that he was unable to retreat safely. In fact, in the three statements that petitioner gave to police, petitioner never once claimed to fear that Mr. Gaskin was going to use deadly physical force against him. (Tr. at 338-339.)

Further, Ms. Griffith testified that she left the apartment with her daughter before petitioner removed the knife from beneath the couch, and returned to find blood on the floor of the living room. (Tr. at 201-203). She then saw that the two men were in the bedroom, face-to-face, with Mr. Gaskin's back against the wall with their hands near their torso area. (*Id.* at 203-207.) There was also blood on the bedroom wall. The medical examiner testified that the two stab wounds that caused Mr. Gaskin's death were inflicted with a plunging or stabbing motion,

16

not a swinging motion as petitioner claims, and also testified that the two deadly stab wounds likely occurred towards the end of the altercation. (*Id.* at 263-264.) Therefore, it was reasonable for the fact finder to conclude that the deadly stab wounds occurred when petitioner had the physical advantage over Mr. Gaskin and was in a position to retreat. Further, petitioner did retreat, and flee the scene. Consequently, this court finds that a reasonable fact finder could have found that the prosecution proved beyond a reasonable doubt that petitioner did not act in self-defense. Petitioner's request for habeas relief on the basis of insufficient evidence is therefore denied.

## II. Improper Impeachment of a Prosecution Witness

Petitioner claims that the trial court deprived him of a fundamentally fair trial and due process of the law, when it permitted respondent to improperly impeach Ms. Griffith, respondent's witness. A party may not typically impeach their own witness, however N.Y. Crim. Proc. Law § 60.35 allows a limited exception where the witness, "in a criminal proceeding[,] gives testimony upon a material issue of the case which tends to disprove the position of such party." N.Y. Crim. Proc. Law § 60.35; *People v. Griffiths*, 247 A.D.2d 550, 551 (2d Dept. 1998). As petitioner's claim primarily alleges an error in the

application of state law, federal habeas relief is not available. 28 USC § 2254; *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see also Fleurant v. Duncan*, No. 00-CV-7647, 2003 WL 22670920, at *25 (E.D.N.Y Nov. 7, 2003).

A federal court may only intervene in the state judicial process when a party's federal constitutional rights or rights under federal law are violated. *Wainwright v. Goode*, 464 U.S. 78, 83 (1983) (per curiam). "The erroneous admission of evidence in a state criminal trial only rises to the level of constitutional error when it deprives the defendant of a fundamentally fair trial, and in this way, of due process of law." *DeLeon v. Hanslmaier*, 104 F.3d 355 (2d Cir. 1996) (citing *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir.), *cert. denied*, 464 U.S. 1000 (1983)). When determining whether the error denied defendant of his due process rights, courts consider "whether the erroneously admitted evidence, viewed objectively in the light of the entire record before the jury, was sufficiently material to provide the basis for a conviction or to remove a reasonable doubt that would have existed on the record without it." *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir.1985).

Plaintiff's claim is based on an alleged violation of New York State law. Under New York Criminal Procedure, a party may not impeach its own witness, except under limited circumstances. N.Y. Crim. Pro. Law 60.35 (1-2). Upon direct examination, Ms. Griffith stated that she could not recall exactly what petitioner said upon entering her apartment on November 12, 2002. (Tr. at 169.) She also testified that she could not hear the conversation between petitioner and Mr. Gaskin after petitioner entered the bedroom because "I wasn't in the room with them" and "the door was half opened." (Tr. at 173-74.)

Later in her direct examination, Ms. Griffith stated that, upon returning to the apartment and seeing blood on the living room floor, she entered the bedroom and saw petitioner's hands in the general vicinity of Mr. Gaskin's torso. (Tr. at 196.) She testified that she did not see petitioner stabbing Mr. Gaskin, in part because "everything just happened one, two three. . . . It wasn't like a process where you stood there and looked." (Tr. at 208-209.) Respondent then attempted to impeach Ms. Griffith with a prior statement made at the District Attorney's office on November 12, 2004, recorded on audiotape. (*Id.* at 210.) Defense counsel objected, contended that Ms. Griffith had not affirmatively damaged the State's case and, therefore,

introduction of a prior inconsistent statement was impermissible. (*Id.* at 210-12.) The court ultimately sustained defense counsel's objection to the use of the prior statement. (Tr. 208-09); *see also* See N.Y. Crim. Pro. Law 60.35(3)("When a witness has made a prior signed or sworn statement contradictory to his testimony . . . but his testimony does not tend to disprove the position of the party who called him . . . evidence that the witness made such prior statement is not admissible and such party may not use such prior statement for the purpose of refreshing the recollection of the witness.").

The trial court did, however, allow the use of extrinsic evidence to impeach Ms. Griffith's credibility, specifically, evidence of her communications with petitioner before trial. Petitioner refers in his Appellate Division brief to the use of extrinsic evidence to impeach Ms. Grifith, specifically, the testimony of a Department of Corrections computer assistant who testified about the number of calls and visits made to petitioner while he awaited trial. (Tr. at 311.) Respondent then attempted to show that the contact with petitioner changed Ms. Griffith's testimony. (*Id.* at 312-17.) Petitioner's counsel objected, the objection was overruled and the Department of Correction computer assistant testified that between petitioner's arrest and trial,

petitioner called Ms. Griffith's cell phone 295 times, and she visited him in jail nine times. (*Id.* at 325-27, 331-32.) Petitioner's counsel opposed the use of the communications and visits to impeach Ms. Griffith and as proof of consciousness of guilt on petitioner's part, but the objection was overruled and respondent referred to the assistant's testimony about Ms. Griffith's communications and visits on summation. (*Id.* at 400-402.) An objection to a statement that the telephone calls were to influence Ms. Griffith was sustained. (*Id.* at 402-403.)

On review, the Appellate Division, applying state law, held, "that the trial court erred in allowing the People to introduce a witness whose sole effect and purpose was to impeach the credibility of the People's main witness", but, given the overwhelming evidence supporting a first-degree manslaughter conviction, "the error in admitting the challenged evidence was harmless." *Pickens*, 60 A.D.3d at 702. It is possible that violations of state evidentiary law may rise to the level of a federal constitutional claim. However, the Supreme Court has held that the erroneous introduction of evidence under state law can only be grounds for habeas relief if "the introduction of the challenged evidence . . . 'so infused the trial with unfairness as to deny due process of law.'" *McGuire*, 502 U.S. at 75 (quoting

*Lisbena v. California*, 314 U.S. 219, 228 (1941)).

As the contents of Ms. Griffith's out of court statement were not permitted in open court and, in fact, Ms. Griffith's in-court testimony substantially assisted petitioner over the state, petitioner cannot show that the respondent's impeachment of Ms. Griffith rendered his trial fundamentally unfair, rising to the level of a federal constitutional claim. Similarly, the testimony of a Department of Corrections computer assistant who testified about the number of calls and visits made to petitioner while he awaited trial, though improper under state evidentiary law, does not rise to the level of a federal constitutional violation and is therefore not eligible for federal habeas relief.

Further, under the federal rules of evidence, "any party, including the party that called the witness, may attack the witness's credibility." F.R.E. 607. Ms. Griffith testified for the respondent at plaintiff's bench trial before the New York State Supreme Court, Kings County. Therefore, the respondent's impeachment of Ms. Griffith was permissible under federal evidentiary law and thus, on its face, not a violation of petitioner's due process rights.

**IV. Petitioner's Claim of Ineffective Assistance of Counsel**

Petitioner asserts that trial counsel was ineffective, as he did not (1) call an expert in the field of blood stain analysis and crime scene reconstruction, (2) failed to have the knife sheath tested, and (3) failed to make appropriate trial motions. (Refiled Habeas Petition at 9.) While petitioner asserted this claim in his appeal to the Appellate Division, Second Department, through his supplemental brief dated May 19, 2010, he did not raise this claim in subsequent appeals. Therefore, this claim is unexhausted.

For the sake of completeness, however, this court has reviewed this claim on the merits and finds that habeas relief is not warranted. "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). To establish a claim of ineffective assistance of counsel under *Strickland v. Washington*, a petitioner must "(1) demonstrate that his counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms; and (2) affirmatively prove prejudice arising from counsel's allegedly deficient representation." 466 U.S. 668,688 (1984); *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) (citation and internal quotation marks omitted). "In assessing

whether counsel's performance was objectively reasonable, [the Court] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and be watchful to eliminate the distorting effects of hindsight." *Brown v. Greene*, 577 F.3d 107, 110 (2d Cir. 2009) (citation and internal quotation marks omitted). To establish the requisite prejudice, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

"While failure to conduct adequate pre-trial investigation may serve as the basis for a claim of ineffective assistance of counsel under *Strickland*, see 466 U.S. at 690-91, a petitioner must do more than make vague, conclusory, or speculative claims as to what evidence could have been produced by further investigation." *Taylor v. Poole*, 07-CIV-6318(RJH)(GWG), 2009 WL 2634724 (S.D.N.Y. Aug. 27, 2009). "[W]here a petitioner claims that counsel should have investigated potential witnesses, the petitioner must demonstrate that the witnesses would have testified at trial and explain the expected nature of the witnesses' testimony." *Id.* at *42. Moreover, "counsel's decision as to 'whether to call specific witnesses—even ones that might

offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation.'" *United States v. Best*, 219 F.3d 192, 201 (2d Cir.2000) (quoting *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir.1997)). Such decisions are considered "tactical." *United States v. Smith*, 198 F.3d 377, 386 (2d Cir.1999).

Petitioner asserts that counsel's failure to call expert witnesses, secure testing on the knife sheath, or make appropriate pre-trial motions constituted ineffective assistance of counsel. (Refiled Habeas Petition at 6.) Counsel is not required to exhaust all possible means of procuring exculpatory evidence, as these decisions "fall squarely within the ambit of trial strategy and, if reasonably made, cannot support an ineffective assistance claim." *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992) (internal quotations omitted). Petitioner cannot demonstrate that any particular expert witness would have testified at trial or the contents of their testimony. As these decisions are tactical, they do not rise to the level of being objectively unreasonable.

Even if petitioner could establish that his counsel's performance was objectively unreasonable, "the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*,

25

466 U.S. at 668. "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome, [and] a court hearing an ineffectiveness claim must consider the totality of the evidence." *Id*. at 669-70.

The Appellate Division, dismissed plaintiff's ineffective assistance claims summarily, finding that "the defendant was not denied the effective assistance of counsel." *Pickens*, 60 A.D.3d at 703. Following a full review of the record, this court similarly finds that petitioner fails to demonstrate that but for counsel's alleged errors, the outcome of the hearing would have been different. Petitioner cannot demonstrate with a reasonable probability that, but for counsel's decisions, the court would have reached a different conclusion.

Accordingly, as petitioner has not demonstrated that his counsel's performance was objectively unreasonable or that the result of the proceeding would have been different but for his counsel's errors, although the claim is unexhausted, petitioner's ineffective assistance of counsel claim is denied on the merits under 28 U.S.C. § 2254(b)(2).

## CONCLUSION

For the reasons set forth above, petitioner's motion pursuant to 28 U.S.C. § 2254 in this case is denied. Petitioner

failed to make a substantial showing of a denial of a constitutional right. Petitioner's claim regarding the State's failure to rebut a defense of justification is denied on the merits. Petitioner's claim that the court improperly permitted the respondent to impeach its own witness is based in state law and is not eligible for federal habeas relief. Finally, petitioner's claim of ineffective assistance of counsel is denied as it is procedurally barred for failure to exhaust and also fails on the merits. The Clerk of Court is respectfully directed to enter judgment in favor of respondent, close the case, and serve a copy of this order and the judgment on *pro se* petitioner.

**SO ORDERED.**

Dated:    April 16, 2019

        Brooklyn, New York

                                         /s/
                                 Kiyo A. Matsumoto
                                 United States District Judge